Filed 4/11/13  In re J.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.C., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E057343 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J240444, J240445, J240446, J241228) |
| v. | O P I N I O N |
| A.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

At a hearing held pursuant to Welfare and Institutions Code section 366.26,[1] the trial court terminated the parental rights of defendant and appellant A.C. (Mother) with respect to her four children. On appeal, Mother contends the court erred when it denied her a hearing on her request to change court order, commonly referred to as a section 388 petition. We reject this argument and affirm the trial court's orders.

## I. FACTUAL AND PROCEDURAL SUMMARY

### A. *2008 Dependency Case*

In August 2008, Mother had three children: J1, J2, and J3. Their ages at that time were three years, two years, and seven months, respectively. In that month, J3 was treated at a hospital for a broken arm. The hospital contacted defendant and appellant San Bernardino County Children and Family Services (CFS) and law enforcement because the break was "suspicious." Following an investigation, CFS filed petitions for dependency jurisdiction concerning the three children. The court found true allegations, among others, that J3 sustained a severe injury under Mother's care that would not have occurred under adequate supervision and customary caretaking. In October 2009, after Mother completed reunification services, the case was dismissed.

### B. *Initial Removal and Detention in 2011 Dependency Case*

In August 2011, J1, J2, and J3 were ages six years, five years, and three years, respectively. Mother was living with her boyfriend, Jermaine B., at the time.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

On August 21, 2011, J3 (the youngest) nearly drowned when Jermaine left her briefly unattended in a bathtub. The child was taken to the hospital where a doctor found bruises on J3 in different stages of healing, thermal burns on her legs and back, and a laceration on her liver. The doctor told a social worker the injuries were "'highly suspicious.'"

A social worker conducted an investigation and interviewed Mother, Jermaine, and the children. She learned that Jermaine had been physically abusive to the children. On one occasion, Jermaine caused J1 to have a black eye. He explained the injury to Mother by saying that the boy "'has to learn not to run his mouth.'"

Mother and Jermaine were arrested and charged with willful cruelty to a child under Penal Code section 273a. Jermaine was also charged with willfully inflicting injury on a child under Penal Code section 273d.

CFS removed the children from Mother's custody and filed juvenile dependency petitions concerning the children pursuant to section 300. The court ordered them detained and placed them in CFS custody on August 26, 2011.

In the dependency petitions, CFS alleged: Mother allowed Jermaine to discipline the children, resulting in physical injuries; Mother had a prior dependency arising from a physical injury to a child; and the children's father's whereabouts were unknown and he does not provide support for the children.

In a report prepared for the jurisdictional/dispositional hearing, the social worker described reports by the children of being hit, or "whooped," by Jermaine on numerous

3

occasions.  Medical examinations revealed marks and scars indicating physical abuse and neglect.  The social worker concluded that the children suffered injuries because of Jermaine's "extreme discipline" and Mother's "lack of protection."  The social worker also noted that Mother received family reunification services in the prior dependency case, "but does not appear to have benefited from services."

C.  *Birth of D.B. and New Dependency Petitions*

Mother's fourth child, D.B., was born in October 2011.  Five days after his birth, CFS filed a dependency petition concerning him.  The petition was based, in part, on the allegations of physical abuse inflicted on J1, J2, and J3.  CFS further alleged that Mother was unable to provide support for the child because she was in jail.

On October 26, 2011, CFS filed amended dependency petitions as to J1, J2, and J3.  The amended petitions included allegations that Mother allowed Jermaine to physically abuse the children and caused them severe physical injuries.  In a report for the jurisdictional/dispositional hearing on the amended petitions, CFS recommended that reunification services not be offered to Mother.

On October 31, 2011, five-year-old J2 told a social worker that on five occasions Jermaine put his hand inside the child's underwear and touched her "pee-pee."  The social worker asked J2 if she had told Mother about this.  J2 said she told Mother that Jermaine "was 'digging in my panties,'" and that Mother responded by asking, "'Why you in trouble?'"  In a subsequent interview, J2 said that Jermaine "'digs' in her panties and 'shakes' his hand in her panties."  She said that Mother was aware that Jermaine "had

4

been 'digging' in her panties." She said Mother told Jermaine to stop, and told J2 to tell Jermaine to stop. Mother and Jermaine denied any sexual abuse.

On December 8, 2011, CFS filed second amended juvenile dependency petitions as to J1, J2, and J3, and a first amended juvenile dependency petition as to D.B. that added allegations that Jermaine had sexually abused J2 and that Mother failed to protect the child from such abuse.

Mother was released from jail on December 16, 2011.

D. *Jurisdiction and Disposition*

At a jurisdictional hearing for all four children, the court found the allegations of the amended petitions true (with the exception of one allegation not relevant here).

At a contested dispositional hearing held in February 2012, Mother testified that upon release from jail she "went straight to [her] social worker" and began participating in programs concerning domestic violence, anger management, and parenting skills. She also began weekly two-hour visits with the children, which went well. She terminated her relationship with Jermaine.

At the conclusion of the hearing, the court denied reunification services for the parents and set a hearing to be held pursuant to section 366.26. The court explained that Mother "has not learned from the services that were offered previously in 2008." Furthermore, the court found that Mother is "in denial" and has failed "to truly recognize the significance of" the physical and sexual abuse committed against the children.

Mother thereafter visited the children consistently once each month. The three older children were excited to see her and ran to her for hugs and kisses. The infant D.B. did not appear to recognize Mother, but did warm up to her during the visit. The foster mother reports that "the visits tend to go well."

In June 2012, a prospective adoptive home was identified for the four children. The prospective adoptive parents were familiar with the children prior to the removal of the children from Mother. When they learned the children were in foster care, they requested the children be placed with them and, after they were approved by CFS, became "excited about adopting" them. According to the social worker, the "children refer to the prospective adoptive parents as 'mom' and 'dad' and respond to them as parental figures."

E. *Mother's Section 388 Petition, Section 366.26 Hearing, and Termination of Parental Rights*

Mother filed a section 388 petition in September 2012. She requested that the children be returned to her care and custody or, in the alternative, that reunification services be provided to her and visitation liberalized to include unsupervised overnight and weekend visits. The petition was signed by Mother's attorney, and supported by the attorney's declaration.

The attorney stated: "[M]other visits her children regularly. Her children call her, 'mommy' and tell her they want to come home. She has a stable income and place to live. She is attending the A Better Way domestic violence program. She is compliant

6

with the terms of her probation and is attending a 52 week parenting class and counseling as conditions. She is also attending the Nurturing Parent Program and case management program at Moses House. . . . [¶] . . . She has demonstrated through her hard work and commitment that it is in her children's best interest to grant her request."

Attached to the 388 petition were documents evidencing the following:

1. A statement from the Social Security Administration dated January 31, 2012, indicating a payment to Mother for the month of February 2012 in the amount of $768.96;

2. A letter from an individual stating that Mother lives with her, pays her $300 rent per month, "keeps to herself," and helps in the household;

3. A record of her class attendances in "A Better Way," a domestic violence and rehabilitation program, showing dates of attendance in January, May, June, July, and August 2012;

4. A letter from the program director for the Moses House Ministries "Nurturing Parenting Program"; among other favorable comments, the director stated that Mother "has shown strong improvements in the areas of nurturing activities," "has secured safe and stable housing," is "in the process of pursuing her own place of residence for herself and her children," and is enrolling in a GED preparation course;

5. A letter from a "Parenting Educator" with Moses House stating that Mother had enrolled in Moses House's "Nurturing Parenting Program"; and

6. A class syllabus for a "52 Weeks Parenting Class."

7

The court ordered a hearing on the request "because the best interest of the child may be promoted by the request."

CFS filed a written response to the 388 petition. After summarizing Mother's history with CFS, the social worker stated: "[Mother] does not appear to have a clear understanding of her responsibility to protect her children. CFS has been involved on two separate occasions due to severe, unexplained injuries to child [J3]. In addition, she knowingly allowed her children to be physically abused by her boyfriend, [Jermaine]. [Mother] received services the first time the children became involved with CFS. It does not appear that she benefitted from the services even though she stated she was going to keep her children safe from harm after the first CFS involvement. [Mother] has provided information regarding current enrollment in programs that she already took through CFS when she received services through CFS previously. She has provided information that she is currently enrolled in some programs but has not completed any of them. In addition, she was referred to the same services at the beginning of the current case."

A hearing was held to determine whether Mother had made a prima facie showing for relief under section 388. Mother submitted a certificate of completion of the first of the three-part Moses House Nurturing Parenting course. Following the argument of counsel, the court found that Mother had failed to make the requisite showing and denied the request for an evidentiary hearing on the section 388 petition.

The court acknowledged Mother's participation in various programs, but noted that the section 388 petition did "not address . . . the physical and sexual abuse of [J2]

8

and [J3]." The court noted further that this is the second dependency case concerning these children and that the section 388 petition was not supported by any report from a therapist, counselor, or program director describing any progress made by Mother or any change of circumstances. Finally, the court found that the requested change would not be in the best interests of the children.

After the court ruled on the section 388 petition, it held the section 366.26 hearing. Mother offered no affirmative evidence. After the introduction into evidence of certain reports and the argument of counsel, the court selected adoption as the permanent plan and terminated parental rights.

## II. DISCUSSION

Section 388 allows a parent of a dependent child to petition the juvenile court to change, modify, or set aside any previous order of the juvenile court. The statute "'provides a means for the court to address a legitimate change of circumstances' and affords a parent her [or him] final opportunity to reinstate reunification services before the issue of custody is finally resolved. [Citation.] Section 388 is central to the constitutionality of the dependency scheme. [Citation.]" (*In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1506.)

In order to prevail on a section 388 petition, the parent "must establish that new evidence or changed circumstances exist so that the proposed change in the court's order would promote the best interests of the child." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642.) When it appears from the petition that the best interests of the child

9

"may" be promoted by the proposed modifications, the court "shall" order a hearing on the petition.  (§ 388, subd. (d).)

Although courts will construe a petition liberally in favor of granting a hearing (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414; *In re Marilyn H.* (1993) 5 Cal.4th 295, 309), the court may summarily deny a section 388 petition without a full evidentiary hearing if the petitioner fails to make a prima facie showing of both elements (Cal. Rules of Court, rule 5.570(d); *In re Marcelo B., supra,* 209 Cal.App.4th at p. 642; *In re Anthony W.* (2001) 87 Cal.App.4th 246, 250).  "A 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations . . . is credited."  (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593, citing *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719, fn. 6.)  "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case.  [Citation.]"  (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

We review a juvenile court's summary denial of a section 388 petition for abuse of discretion.  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460.)  If the petition fails to make the required prima facie showing, summary denial of the petition without a hearing does not violate the petitioner's due process rights.  (*Id.* at pp. 460-461.)

Here, the court did not abuse its discretion in denying Mother's section 388 petition without a full evidentiary hearing.  The section 388 petition indicates that Mother has received money from the Social Security Administration and has a place to live.  She

10

is also participating in certain parenting and domestic violence programs. The social worker explained, however, that these are the same types of "programs that she already took through CFS when she received services" in the 2008 dependency proceedings. More importantly, as the court noted, the section 388 petition and its supporting evidence do not indicate that Mother has successfully addressed the concerns that gave rise to the current dependency case. The three children in her care suffered physical abuse and at least one suffered sexual abuse. Such abuse occurred despite the completion of services she received in the 2008 dependency case and her knowledge that it was occurring. Although the program director of Moses House notes Mother's "improvement's in the areas of nurturing activities" and "in her understanding of developmental milestones and age appropriated [*sic*] activities and discipline," there is no report addressing any progress or change with respect to her failure to protect her children from physical and sexual abuse. The court's finding that Mother failed to make a prima facie showing as to a change in circumstances is thus reasonable and within the scope of its discretion.

The court could also reasonably find, as it did, that the section 388 petition failed to establish a prima facie showing that the requested change would be in the best interests of the children. The children are together and in the care of prospective adoptive parents who they refer to as "mom" and "dad." The court's determination that the children's best interests would not be promoted by disrupting the stability that now exists in their lives by granting the section 388 petition is not an abuse of discretion.

We therefore reject Mother's arguments and affirm the trial court's orders.

11

## III. DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
                                                  Acting P. J.


We concur:

MILLER _____
                                J.

CODRINGTON _____
                                J.